106 P.3d 196 (2005)
153 Wash.2d 614
STATE of Washington, Respondent,
v.
Michael ROGGENKAMP, Petitioner.
State of Washington, Respondent,
v.
Jason Ray Clark, Petitioner.
Nos. 73839-4, 74231-6.
Supreme Court of Washington, En Banc.
Argued January 15, 2004.
Decided February 10, 2005.
*198 Allen Hansen & Maybrown PS, Richard Hansen, Cassandra L. Stamm, Horwitz & Stamm, Seattle, David Schultz, Camas, for Petitioner.
James Morrissey Whisman, Stephen Hobbs, Deputy, King County Prosecutor's Office, Seattle, Richard Alan Melnick, Vancouver, for Respondent.
ALEXANDER, C.J.
The primary question presented to us in this consolidated review is whether the term "[i]n a reckless manner," which appears in the vehicular homicide and vehicular assault statutes, is defined by the "willful or wanton disregard for the safety of persons or property" language of the reckless driving statute. We answer "no" to that question, holding to the well-established definition of the term as "driving in a rash or heedless manner, indifferent to the consequences." We, therefore, affirm the decision of the Court of Appeals in each of the cases before us.

I

State v. Roggenkamp
Michael Roggenkamp was charged in King County Juvenile Court with one count of vehicular homicide and two counts of vehicular assault. The charges stemmed from an incident that occurred in May 2000 at a road intersection near Enumclaw. Then and there a vehicle driven by 16-year-old Roggenkamp struck a vehicle driven by JoAnn Carpenter. When the collision occurred, Roggenkamp was traveling in the wrong lane of traffic at more than twice the speed limit in an attempt to pass another vehicle. Carpenter and a passenger in her car, Andrew Strand, were both severely injured. Another passenger, Carpenter's son, Michael, died from injuries he received in the accident.
The charges against Roggenkamp were premised on the "in a reckless manner" alternative of the vehicular homicide and vehicular assault statutes.[1] In finding Roggenkamp guilty, the trial court determined that driving or operating a vehicle "in a reckless manner" means to "operat[e] a motor vehicle in a rash and heedless manner, indifferent to the consequences." State v. Roggenkamp, 115 Wash.App. 927, 935, 64 P.3d 92 (2003).
Roggenkamp appealed his conviction to the Court of Appeals, Division One, which affirmed. Roggenkamp then sought review by this court, arguing that the trial court erred when it applied the "rash and heedless manner, indifferent to the consequences" language, and did not apply the "willful or wanton disregard for the safety of persons or property" language that appears in the reckless driving statute, RCW 46.61.500(1).[2] He contended, alternatively, that a superseding event caused the incident that led to the charges against him and that, therefore, his convictions should be reversed and the *199 charges dismissed. We granted Roggenkamp's petition for review.

State v. Clark
Jason Ray Clark was charged in Clark County Superior Court with three counts of vehicular assault. The charges arose out of a June 2001 car crash in Vancouver, Washington in which Clark's speeding vehicle struck a vehicle driven by Deborah Pratt. Pratt and two of Clark's passengers were seriously injured in the incident.
Like the charges against Roggenkamp, the charges against Clark were premised on the "in a reckless manner" alternative of the vehicular assault statute. In jury instruction 10, the trial court indicated that "to operate a vehicle in a reckless manner" means driving in a "rash or heedless manner, indifferent to the consequences." Clerk's Papers at 17. The jury found Clark guilty as charged. Clark appealed his convictions to the Court of Appeals, Division Two, asserting for the first time that the trial court erred in instructing the jury that one operates a vehicle "in a reckless manner" if he or she drives in a "rash or heedless manner, indifferent to the consequences." The Court of Appeals affirmed the conviction. State v. Clark, 117 Wash.App. 281, 71 P.3d 224 (2003). Clark subsequently sought review by this court, again raising the question of whether the jury was properly instructed on the definition of "in a reckless manner." We granted Clark's petition for review and consolidated the review with Roggenkamp's.

II
The State contends here, as it did at the Court of Appeals, that Clark waived his right to challenge the adequacy of jury instruction 10 by failing to object to the instruction at trial. We reject this argument. Failure to properly instruct the jury on an element of a charged crime is an error of constitutional magnitude which may be raised for the first time on appeal. State v. Stein, 144 Wash.2d 236, 241, 27 P.3d 184 (2001); RAP 2.5(a).

III

A. The appropriate definition of "in a reckless manner"
Roggenkamp and Clark each assert that the trial court applied an erroneous definition of "in a reckless manner" as that term is used in the vehicular homicide and vehicular assault statutes. They would have us hold that the term is defined by the "willful or wanton disregard for the safety of persons or property" language that appears in the reckless driving statute, RCW 46.61.500(1).
We review a question of statutory construction de novo. State v. Votava, 149 Wash.2d 178, 183, 66 P.3d 1050 (2003). Statutory construction begins by reading the text of the statute or statutes involved. If the language is unambiguous, a reviewing court is to rely solely on the statutory language. State v. Avery, 103 Wash.App. 527, 532, 13 P.3d 226 (2000). Where statutory language is amenable to more than one reasonable interpretation, it is deemed to be ambiguous. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). Legislative history, principles of statutory construction, and relevant case law may provide guidance in construing the meaning of an ambiguous statute. Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 243, 59 P.3d 655 (2002).

1. The definition of "in a reckless manner" as used in the vehicular homicide and vehicular assault statutes is well settled in our case law.
The term "in a reckless manner" is not defined in either the vehicular homicide statute, RCW 46.61.520, or the vehicular assault statute, RCW 46.61.522. Nor is the term defined elsewhere in the Motor Vehicle Code. However, through a series of decisions by this court, a definition of the term "in a reckless manner" for purposes of the vehicular homicide and vehicular assault statutes has evolved and is now well settled. This evolution culminated in our decision in State v. Bowman, 57 Wash.2d 266, 270, 271, 356 P.2d 999 (1960), in which we indicated that driving "in a reckless manner" means "driving *200 in a rash or heedless manner, indifferent to the consequences." (Emphasis omitted.)
Roggenkamp and Clark each assert that the Court of Appeals has wavered in its application of the definition of "in a reckless manner." In support of this assertion, they call to our attention three cases in which divisions of that court have applied the "willful or wanton disregard for the safety of persons or property" language of the reckless driving statute to vehicular assault or vehicular homicide cases. See State v. Hursh, 77 Wash.App. 242, 248, 890 P.2d 1066 (1995) (Division One) (vehicular assault); State v. Miller, 60 Wash.App. 767, 773, 807 P.2d 893 (1991) (Division Three) (vehicular homicide); and State v. McAllister, 60 Wash.App. 654, 658-59, 806 P.2d 772 (1991) (Division Three) (vehicular homicide).
We view the McAllister, Miller, and Hursh decisions as aberrations in the long string of cases, stretching back to 1938, that have rejected defining the term "in a reckless manner" in vehicular homicide and vehicular assault cases as "willful or wanton disregard for the safety of persons or property." This position finds support in the fact that Division Three of the Court of Appeals implicitly declined to follow its holdings in Miller and McAllister in a later case in which it explicitly rejected a defendant's contention that "the `reckless manner' element of vehicular assault is the same as the `willful or wanton disregard' element of reckless driving." State v. Thompson, 90 Wash.App. 41, 47-48, 950 P.2d 977 (1998). In that case, the court held that driving in a "`reckless manner' ... means to drive in a rash or heedless manner, with indifference to the consequences." Id. at 48, 950 P.2d 977.

2. Principles of statutory interpretation dictate that we not adopt petitioners' proposed definition of driving "in a reckless manner."
The interpretation of driving "in a reckless manner" that petitioners advocate would require us to dismember both the term "in a reckless manner," as used in the vehicular homicide and vehicular assault statutes, and the term "reckless driving," as used in the reckless driving statute. We say that because in order to hold that "reckless" in the term "in a reckless manner" has the same meaning as "reckless" in the term "reckless driving," we would have to sever the word "reckless" in each of these statutes from the surrounding context and read the word as if it stood alone. We are not inclined to do that because in doing so we would violate fundamental principles of statutory construction.
A principle consistent with this view is that of noscitur a sociis, which provides that a single word in a statute should not be read in isolation, and that "`the meaning of words may be indicated or controlled by those with which they are associated.'" State v. Jackson, 137 Wash.2d 712, 729, 976 P.2d 1229 (1999) (quoting Ball v. Stokely Foods, Inc., 37 Wash.2d 79, 87-88, 221 P.2d 832 (1950)). In Jackson, we applied this principle and held that the word "shelter" in the phrase "food, water, shelter, clothing, and medically necessary health care," as used in RCW 9A.42.010(1), should not be isolated and analyzed apart from the words surrounding it. Id. In interpreting statutory terms, a court should "`take into consideration the meaning naturally attaching to them from the context, and [ ] adopt the sense of the words which best harmonizes with the context.'" Id. (quoting McDermott v. Kaczmarek, 2 Wash.App. 643, 648, 469 P.2d 191 (1970) (quoting 50 AM.JUR. Statute s § 247 (1944))).
In the vehicular homicide and vehicular assault statutes, the word "reckless" is plainly part of the term "in a reckless manner." By the same token, the word "reckless" as it appears in the reckless driving statute is part of the term "reckless driving." The terms "reckless manner" and "reckless driving" both function as single units of meaning in their respective statutes. In each, "reckless" functions as an adjective. In the vehicular homicide and vehicular assault statutes, "reckless" modifies "manner." In the reckless driving statute, on the other hand, "reckless" modifies "driving." Furthermore, "reckless manner" and "reckless driving" are each terms of art unique to the state's motor vehicle laws that have long been employed by the legislature to describe driving offenses. See, e.g., LAWS of 1923, ch. 122, § 2. To carve *201 up the phrases "reckless manner" and "reckless driving" by severing "reckless" from each phrase in order to read it in isolation would clearly violate the dictates of the aforementioned doctrine of noscitur a sociis.[3]
Another well-settled principle of statutory construction is that "each word of a statute is to be accorded meaning." State ex rel. Schillberg v. Barnett, 79 Wash.2d 578, 584, 488 P.2d 255 (1971). "`[T]he drafters of legislation... are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute.'" In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 767, 10 P.3d 1034 (2000) (quoting Greenwood v. Dep't of Motor Vehicles, 13 Wash.App. 624, 628, 536 P.2d 644 (1975)). "[W]e may not delete language from an unambiguous statute:' "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous."'" State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (quoting Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996))).
Petitioners' reading of "in a reckless manner" runs afoul of the aforementioned principle because it would render some words in the statute to be without meaning or purpose. Isolating "reckless" from the phrase "in a reckless manner," as petitioners advocate, would render the word "manner" meaningless and superfluous. Petitioners, in short, would rewrite the vehicular homicide and vehicular assault statutes by stripping out the word "manner" so that an element of vehicular homicide or vehicular assault is "driving recklessly." We should resist doing that because when interpreting a statute, "`this court is required to assume the Legislature meant exactly what it said and apply the statute as written.'" Pearsall-Stipek, 141 Wash.2d at 767, 10 P.3d 1034 (quoting In re Custody of Smith, 137 Wash.2d 1, 8, 969 P.2d 21 (1998)). In the vehicular homicide and vehicular assault statutes, the legislature said that operating or driving "a vehicle in a reckless manner," not "driving recklessly," was an element of the crime. We must assume that the legislature meant precisely what it said and apply the statute as written.
Another fundamental rule of statutory construction is that the legislature is deemed to intend a different meaning when it uses different terms. State v. Beaver, 148 Wash.2d 338, 343, 60 P.3d 586 (2002) ("[w]hen the legislature uses different words within the same statute, we recognize that a different meaning is intended."); Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 160, 3 P.3d 741 (2000) (it is "well established that when `different words are used in the same statute, it is presumed that a different meaning was intended to attach to each word.'" (quoting State ex rel. Pub. Disclosure Comm'n v. Rains, 87 Wash.2d 626, 634, 555 P.2d 1368 (1976))).[4] Here, the legislature chose to use the term "in a reckless manner" in the vehicular homicide and vehicular assault statutes and to use the term "reckless driving" in another.[5] Because the *202 legislature chose different terms, we must recognize that a different meaning was intended by each term.[6]
The structure of the vehicular homicide and vehicular assault statutes further dictates that "in a reckless manner" not be defined as "willful or wanton disregard for the safety of persons or property." As the Court of Appeals correctly observed, "[t]here are three alternative means of committing both vehicular homicide and vehicular assault." Roggenkamp, 115 Wash.App. at 935, 64 P.3d 92 (footnote omitted). These offenses can be committed in three alternative ways: by operating a motor vehicle either while "under the influence of intoxicating liquor or any drug," "[i]n a reckless manner," or "[w]ith disregard for the safety of others." RCW 46.61.520, .522. If "in a reckless manner" is defined as driving "with willful or wanton disregard for the safety of others," the "in a reckless manner" alternative of committing vehicular homicide or vehicular assault would be completely swallowed up and thus rendered meaningless and superfluous. Both the driving "in a reckless manner" alternative and the driving "with disregard for the safety of others" alternative would apply to the same act, but the "in a reckless manner" alternative would require proof that the defendant acted with willfulness or wantonness. The "in a reckless manner" alternative would be effectively written out of the statute as prosecutors, seeking to avoid having to prove the higher mental state, stopped charging defendants under the "in a reckless manner" alternative. We must assume that when the legislature created three alternative ways of committing vehicular homicide and vehicular assault, it meant for each alternative to be distinct.

3. The legislative histories of the vehicular homicide, vehicular assault, and reckless driving statutes make clear that "in a reckless manner" was intended to have a meaning distinct from "reckless driving."
The present reckless driving statute, RCW 46.61.500, was enacted in 1965. See LAWS of 1965, Ex.Sess., ch. 155, § 59. However, a statute similar to the current statute was enacted in 1937. LAWS of 1937, ch. 189, § 118. The earlier statute made it unlawful to "operate a motor vehicle in a reckless manner" and directed that "[f] or the purpose of this section to `operate in a reckless manner' shall be construed to mean the operation of a vehicle upon the public highways of this state in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property." Id. (Emphasis added.) The vehicular homicide statute (then known as negligent homicide by means of a motor vehicle) was also enacted in 1937. LAWS of 1937, ch. 189, § 120. It provided that "[w]hen the death of any person shall ensue within one year as a proximate result of injury received by the operation of any vehicle ... in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle." Id. (Emphasis added.) In 1961, all laws relating to motor vehicles, including the 1937 reckless driving and vehicular homicide statutes, were repealed and reenacted as part of the Motor Vehicle Code, Title 46 RCW. LAWS of 1961, ch. 12. The 1937 reckless driving statute became RCW 46.56.020, but the language of the statute was unchanged. Id. at 380. The vehicular homicide statute became RCW 46.56.040, but the language of that statute, too, was unchanged. Id. at 381.
It was in 1965 that the legislature undertook a major revision of the State's motor vehicle laws that affected nearly the entire Motor Vehicle Code.[7] LAWS of 1965, Ex.Sess., *203 ch. 155. As noted above, this effort included a repeal of the 1937 reckless driving statute, LAWS of 1965, Ex.Sess., ch. 155, § 91, and the enactment of an entirely new reckless driving statute, LAWS of 1965, Ex.Sess., ch. 155, § 59. The 1965 reckless driving statute, codified at RCW 46.61.500, differs from the reckless driving law it replaced in that it no longer employed the term "in a reckless manner." Because the new statute did not refer to operating a motor vehicle "in a reckless manner," the language of the 1937 reckless driving statute dictating a unique construction of "in a reckless manner" for purposes of that section was necessarily omitted. The only construction of "in a reckless manner" that remained is the one articulated by this court in Bowman: driving in a "rash or heedless manner, indifferent to the consequences." Bowman, 57 Wash.2d at 271, 356 P.2d 999 (emphasis omitted).
This history demonstrates that the legislature has always intended that "reckless manner" as used in the vehicular homicide and vehicular assault statutes not be defined as "willful or wanton disregard for the safety of persons or property." Between 1937 and 1965 both the reckless driving statute and the vehicular homicide statute employed the term "in a reckless manner," but the reckless driving statute expressly provided that the phrase "operate in a reckless manner" was to be given an exceptional construction unique to that section. As used elsewhere in the motor vehicle laws, "in a reckless manner" was to be defined differently.[8] By expressly limiting the "willful or wanton disregard for the safety of persons or property" construction of "in a reckless manner" to the reckless driving statute only, the 1937 legislature clearly demonstrated its intent that "in a reckless manner" as used in the vehicular homicide statute was not to mean "willful or wanton disregard for the safety of persons or property."
In the 1965 revisions to the Motor Vehicle Code, the legislature used different terminology to describe the offense of reckless driving. This choice of language achieved the legislature's purpose of criminalizing driving a vehicle in willful or wanton disregard for the safety of persons or property and eliminating the confusion over the meaning of "reckless manner," as discussed in State v. Dickert, 194 Wash. 629, 632, 79 P.2d 328 (1938). That the 1965 reckless driving statute was enacted in order to differentiate between "reckless driving" and driving "in a reckless manner" reinforces the conclusion that the legislature intended "reckless driving" to have a meaning distinct from "in a reckless manner."
When amending a statute, the legislature is presumed to know how the courts have construed and applied the statute. In re Pers. Restraint of Quackenbush, 142 Wash.2d 928, 936, 16 P.3d 638 (2001). Furthermore, "[i]t is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it." Johnson v. Morris, 87 Wash.2d 922, 927, 557 P.2d 1299 (1976). Thus, our definition of "reckless manner" as used in the vehicular homicide statute, articulated in Bowman, 57 Wash.2d at 271, 356 P.2d 999, operates as if it was originally written into the vehicular homicide statute and we must presume that the legislature was aware of this construction.
The vehicular homicide and vehicular assault statutes have been recodified or amended numerous times since they were enacted. See LAWS of 2001, ch. 300, § 1; LAWS of 1998, ch. 211, § 2; LAWS of 1996, ch. 199, § 8; LAWS of 1996, ch. 199, § 7; LAWS of 1991, ch. 348, § 1; LAWS of 1983, ch. 164, § 2; LAWS of 1983, ch. 164, § 1; LAWS of 1975, 1st Ex.Sess., ch. 287, § 3; LAWS of 1973, 2d Ex. *204 Sess., ch. 38, § 2; LAWS of 1970, Ex.Sess., ch. 49, § 5; LAWS of 1965, Ex.Sess., ch. 155, § 63; LAWS of 1961, ch. 12, § 46.56.040. Despite these many statutory changes, the legislature has never availed itself of the opportunity to redefine the term "in a reckless manner" as used in the vehicular assault or vehicular homicide statutes. Because the legislature has acquiesced in this court's definition of "in a reckless manner," we will not alter our interpretation of that term until the legislature provides a different definition.
In sum, we find no basis upon which to export the "willful or wanton disregard for the safety of persons or property" language used in the reckless driving statute and import it to define the term "in a reckless manner" in the two pertinent felony statutes. We conclude, therefore, that the courts below applied the correct definition of the term "in a reckless manner."

B. Did the Court of Appeals err when it held the evidence was sufficient for the trial court to find that Roggenkamp's actions were the sole proximate cause of the accident?
Roggenkamp makes the additional argument that JoAnn Carpenter's actions prior to the fatal incident were a superseding event that renders his conviction improper[9] and that the Court of Appeals erred in not so concluding. We have reviewed the Court of Appeals decision resolving this issue in favor of the State and find ourselves entirely in agreement with the decision and the reasoning that led to it.
As the Court of Appeals pointed out, JoAnn Carpenter's actions were, at most, a concurring cause, not a superseding cause of the accident. A concurring cause does not shield a defendant from a vehicular homicide conviction. State v. Souther, 100 Wash.App. 701, 710-11, 998 P.2d 350, review denied, 142 Wash.2d 1006, 34 P.3d 1232 (2000). We, therefore, affirm the Court of Appeals on this issue.

IV
For more than four decades we have defined the term "reckless manner," as used in the vehicular assault and vehicular homicides statutes, as meaning to operate a vehicle in a "rash or heedless manner, indifferent to the consequences." The express language of the aforementioned statutes as well as legislative history and recent case law does not provide any basis for departing from this traditional definition. Therefore, we reaffirm that the "rash or heedless manner, indifferent to the consequences" definition is the proper definition of the term "reckless manner" as it appears in RCW 46.61.520(1)(b) and RCW 46.61.522(1)(a). We hold additionally that JoAnn Carpenter's actions were, at the very most, a concurring cause of the accident and not a superseding cause as a matter of law. Therefore, we affirm the Court of Appeals in both of these cases.
We concur: C. JOHNSON, MADSEN, BRIDGE, OWENS, FAIRHURST, JJ., and IRELAND, J.P.T.
SANDERS, J. (dissenting).
Under the guise of judicial restraint the majority disregards unambiguous statutory language by adhering to inapposite precedent, holding "driving `in a reckless manner' under RCW 46.61.520(1)(b) and RCW 46.61.522(1)(a) [means] operating a vehicle in a `rash or heedless manner, indifferent to the consequences.'" Because the plain language of the current Motor Vehicle Code mandates otherwise, and also because the doctrinal basis for the majority's holding has been legislatively repealed, I dissent.

I. Reckless Means Reckless
The critical question presented is the definition of "operating a motor vehicle ... [i]n a reckless manner" as used in the vehicular *205 homicide statute, RCW 46.61.520(1)(b), and vehicular assault statute, RCW 46.61.522(1)(a). Construction of one compels an identical construction of the other. State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989).[1] I conclude both the Roggenkamp and Clark trial courts erred by defining this phrase as "rash or heedless manner, indifferent to the consequences." Clark Clerk's Papers (CCP) at 17 (Instruction 10); see also Roggenkamp Clerk's Papers (RCP) at 126-27 (Conclusion of Law 1).[2] The correct definition of "operating a motor vehicle ... [i]n a reckless manner," RCW 46.61.520(1)(b), is governed by the reckless driving provision, RCW 46.61.500(1). My reasons follow.
This statutory construction inquiry must consider our primary aim is to ascertain the legislature's intent, remembering such intent is derived solely from the plain language of the statute if it is unambiguous, accepting the legislature means precisely what it says. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003); State v. Sullivan, 143 Wash.2d 162, 175, 19 P.3d 1012 (2001). Courts may not rewrite or add statutory language. J.P., 149 Wash.2d at 450, 69 P.3d 318; see also Millay v. Cam, 135 Wash.2d 193, 203, 955 P.2d 791 (1998). However it is equally important that a court may "not delete language from an unambiguous statute." J.P., 149 Wash.2d at 450, 69 P.3d 318." `Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (quoting Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996)). And this principle mandates a statute's plain language is to be discerned not simply from a tunnel-vision approach considering no more than the section at issue, but rather "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002) (emphasis added).
These principles require "every `provision [to] be viewed in relation to other provisions and harmonized if at all possible to [e]nsure proper construction of every provision.'" State v. S.P., 110 Wash.2d 886, 890, 756 P.2d 1315 (1988) (quoting Addleman v. Bd. of Prison Terms & Paroles, 107 Wash.2d 503, 509, 730 P.2d 1327 (1986)). Harmonization is especially necessary when "`statutes relate to the same thing or class,'" in which case they are in pari materia. Monroe v. Soliz, 132 Wash.2d 414, 425, 939 P.2d 205 (1997) (quoting King County v. Taxpayers of King County, 104 Wash.2d 1, 9, 700 P.2d 1143 (1985)). Only when harmonization is not possible does the court separately construe statutes dealing with the same subject matter. Id.; see also State v. Fairbanks, 25 Wash.2d 686, 690, 171 P.2d 845 (1946). We have long held:
"Whenever a legislature had used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby."
Champion v. Shoreline Sch. Dist. No. 412, 81 Wash.2d 672, 676, 504 P.2d 304 (1972) (quoting State ex rel. Am. Piano Co. v. Superior Court, 105 Wash. 676, 178 P. 827 (1919)). And it is to this end that "when similar words are used in different parts of a statute, `"the meaning is presumed to be the same throughout."'" Welch v. Southland Corp., *206 134 Wash.2d 629, 636, 952 P.2d 162 (1998) (emphasis added) (quoting Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 722, 748 P.2d 597 (1988) (quoting Booma v. Bigelow-Sanford Carpet Co., 330 Mass. 79, 82, 111 N.E.2d 742, 743 (1953))); see also De Grief v. City of Seattle, 50 Wash.2d 1, 11, 297 P.2d 940 (1956).
RCW 46.61.500(1) defines "reckless driving" as "driv[ing] any vehicle in willful or wanton disregard for the safety of persons or property." Similarly, vehicular assault and vehicular homicide occur when injury or death results from "operating a motor vehicle ... [i]n a reckless manner." RCW 46.61.520(1)(b); see also RCW 46.61.522(1)(a). Thus, all three sections of the Motor Vehicle Code cited above require "reckless" driving before a defendant is convicted of reckless driving, vehicular homicide, or vehicular assault. Not only does this invoke the common statutory construction principle of construing provisions in pari materia, but we are also legislatively commanded to do as much: "The provisions of this title [Title 46 RCW] shall be construed in pari materia even though as a matter of prior legislative history they were not originally enacted in the same statute." RCW 46.98.020. Such a declaration evinces clear legislative intent to preclude isolationist judicial interpretation of any one provision in the Motor Vehicle Code. To the contrary, in pari materia provisions must and should be construed alike. Champion, 81 Wash.2d at 676, 504 P.2d 304.
Champion is instructive. Analogous to this case, the court there construed the meaning of the term "certificated employee" in former RCW 28A.67.070 (LAWS OF 1970, Ex.Sess., ch. 15, § 16), recodified as amended at RCW 28A.405.210. Champion, 81 Wash.2d at 673, 504 P.2d 304. Noting Title 28A RCW's mandate to construe its provisions in pari materia, see former RCW 28A.98.040 (LAWS OF 1969, Ex.Sess., ch. 223, § 28A.98.040), recodified at RCW 28A.900.040, and the statutory construction canon to construe identical words alike, we held the term included only those with teaching certificates because all references to "certificated" within the code applied only to those persons holding teaching certificates. Champion, 81 Wash.2d at 676-77, 504 P.2d 304. Accordingly, we held nurses were not included within the class of "other certificated employee[s]," even though they were required by state law to hold personnel certificates. Id. at 679-80, 504 P.2d 304.[3] Thus, just as Champion held an identical construction of "certificated employee" was required in Title 28A RCW, the plain language of Title 46 RCW requires identical construction of the term "reckless" as used in RCW 46.61.500(1), 46.61.520(1)(b), and 46.61.522(1)(a), unless there is express language in the statute directing the court to construe it otherwise.
The only section defining "reckless" is RCW 46.61.500(1). Nothing in the current version of RCW 46.61.500 indicates this definition does not or should not apply elsewhere in Title 46 RCW. As such, we are required by plain language and also as a matter of basic statutory construction to give identical definitions throughout Title 46 RCW. RCW 46.98.020; Champion, 81 Wash.2d at 676-77, 504 P.2d 304; cf. infra at 201-204 (discussing prior version of reckless driving statute which, unlike current version, contained express language preventing its application to other provisions in Motor Vehicle Code).
Yet the majority avoids this legislative command and construction canon requiring us to construe these provisions together, holding "operating a motor vehicle ... [i]n a reckless manner," RCW 46.61.520(1)(b), is different from "reckless driving," RCW 46.61.500(1), and therefore requires separate definitions. For support the majority claims "reckless driving," RCW 46.61.500(1), and "operating a motor vehicle ... [i]n a reckless manner," RCW 46.61.520(1)(b), have different meanings because of the independent nomenclature employed. See majority at 200-202 *207 (distinguishing "reckless manner" from "reckless driving"). While it is true the courts presume the legislature "intend[s] a different meaning when it uses different words," majority at 202, the cited difference must be more than mere semantics.[4] The majority cites State v. Beaver, 148 Wash.2d 338, 60 P.3d 586 (2002) as support for its construction proposition. Beaver construed the terms "minimum term" and "release date" in the Juvenile Justice Act of 1977, chapter 13.40 RCW, holding the legislature intended different meanings to attach by its use of differing language. Beaver, 148 Wash.2d at 343-44, 60 P.3d 586. In stark contrast, the majority must assume "operating a motor vehicle," RCW 46.61.520(1)(b), means something other than "driving," RCW 46.61.500(1), to reach its conclusion that the legislature intended different meanings to attach. I am aware of no other way to "operate a vehicle" than "driving" it, though I suppose a long, drawn out, creative inquiry might yield an answer no matter how absurd. However we are not required to wait for that answer; courts cannot follow a route to absurdity when construing statutes. J.P., 149 Wash.2d at 450, 69 P.3d 318 (courts must avoid absurd results when interpreting statutes).

II. Absence of Basis for Law Precludes Calling It Law
Despite RCW 46.98.020 and the statutory construction canon to construe similar language the same throughout a statute, the majority defines "reckless" differently from RCW 46.61.500(1)'s express definition. The majority claims prior cases from this court compel adherence to the "rash or heedless manner, indifferent to the consequences" definition. However a careful review of the history behind the "rash or heedless manner, indifferent to the consequences" standard demonstrates the basis for its distinction from "reckless driving," while correct at the time, no longer exists.

A. Distinction Rested on Plain Language
The legislature first criminalized vehicular homicide in 1937.[5] One alternative for committing vehicular homicide was the "operation of any vehicle in a reckless manner." LAWS OF 1937, ch. 189, § 120. Reckless driving, on the other hand, was criminalized by a different section, which provided:
It shall be unlawful for any person to operate a motor vehicle in a reckless manner over and along the public highways of this state. For the purpose of this section to "operate in a reckless manner" shall be construed to mean the operation of a vehicle upon the public highways of this state in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property.
Id. § 118 (emphasis added). The phrase "[f]or the purpose of this section" prompted this court to distinguish negligent homicide by means of a motor vehicle and reckless driving in State v. Dickert, 194 Wash. 629, 79 P.2d 328 (1938). There we held the definition of reckless driving in section 118 (i.e., "willful or wanton disregard for the safety of persons or property") did not apply to vehicular homicide as defined in section 120. We declined to extend section 118's definition because it
expressly provided that, for the purpose "of this section," to operate in a reckless manner means in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property. The willful or wanton disregard for the safety of persons or property is not one of *208 the elements of negligent homicide, as that crime is defined in § 120.

Id. at 632, 79 P.2d 328 (emphasis added).
The "rash or heedless" standard first found its way into Washington jurisprudence in State v. Stevick, 23 Wash.2d 420, 161 P.2d 181 (1945), overruled on other grounds by State v. Partridge, 47 Wash.2d 640, 646, 289 P.2d 702 (1955), where we held a jury instruction defining "`to operate in a reckless manner'" as "`in a heedless, careless or rash manner or in a manner indifferent to consequences'" was not improper. Stevick, 23 Wash.2d at 426, 427, 161 P.2d 181. Partridge, though overruling Stevick on other grounds,[6] adopted the definition, but pronounced it "[did] not wish to limit the trial courts in their definition of the term." Partridge, 47 Wash.2d at 645, 289 P.2d 702.
Despite Partridge's proclamation, State v. Bowman, 57 Wash.2d 266, 356 P.2d 999 (1960), addressed a jury instruction which defined "`reckless manner'" as "`heedless, careless or rash manner or in a manner indifferent to consequences.'" Bowman, 57 Wash.2d at 270, 356 P.2d 999. We approved the instruction, holding it was "`specifically approved'" in Partridge. Id. However we cautioned against referencing carelessness in the definition as it could possibly be confused with ordinary negligence. Id. at 271, 356 P.2d 999. We concluded "a more precise definition of the terms `to operate a motor vehicle in a reckless manner' would simply be driving in a rash or heedless manner, indifferent to the consequences." Id. The majority relies on this statement to reject application of the reckless driving definition of RCW 46.61.500(1). See majority at 200-201.
While the definition of "reckless manner" wavered slightly over the years from Stevick to Bowman, the underlying distinction of the "reckless manner" definition from the statutory "reckless driving" definition remains grounded in Dickert's reliance on the reckless driving statute's plain language restricting the "willful or wanton" standard to that statute alone. Dickert, 194 Wash. at 632, 79 P.2d 328.[7]

B. Legislative Amendments Subsequent to "Rash and Heedless" Progeny Eliminated Plain Language on Which Definition Was Based
Shortly after Bowman was decided, the legislature in 1961 repealed and reenacted all motor vehicle laws with House Bill 2, codifying them in Title 46 RCW. LAWS OF 1961, ch. 12. Though the legislature did not alter the language criminalizing reckless driving and vehicular homicide, it did add what is now RCW 46.98.020, which directs the courts to construe the act's provisions in pari materia and as if they were enacted at the same time. LAWS OF 1961, ch. 12, at 435, codified at RCW 46.98.020. The section has remained unchanged ever since.
Three years later the legislature enacted House Bill 234 to remove the phrase "[f]or the purpose of this section" that had existed at the time Dickert and its progeny were decided. LAWS OF 1965, Ex.Sess., ch. 155, § 59[8]; cf. LAWS OF 1937, ch. 189, § 118. That the legislature chose to repeal the fundamental basis for Dickert and its progeny *209 (including Bowman) cannot be ignored. Every action by the legislature must be given effect, for "[t]he [l]egislature `does not engage in unnecessary or meaningless acts, and we presume some significant purpose or objective in every legislative enactment.'" In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 769, 10 P.3d 1034 (2000) (quoting John H. Sellen Constr. Co. v. Dep't of Revenue, 87 Wash.2d 878, 883, 558 P.2d 1342 (1976)). Nor are we permitted to presume the omission of that language was unintentional and therefore inconsequential. In re Custody of Smith, 137 Wash.2d 1, 12, 969 P.2d 21 (1998) ("A `court cannot read into a statute that which it may believe the legislature has omitted, be it an intentional or inadvertent omission.'" (quoting Auto. Drivers & Demonstrators Union Local 882 v. Dep't of Ret. Sys., 92 Wash.2d 415, 421, 598 P.2d 379 (1979))), aff'd sub nom. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); see also Jepson v. Dep't of Labor & Indus., 89 Wash.2d 394, 403, 573 P.2d 10 (1977) ("We are not authorized to read into it those things which we conceive the legislature may have left out unintentionally. We must assume the legislature meant what it said." (citations omitted)).
To the contrary we must presume the legislature consciously intended to eliminate the language which served as the underpinning of Dickert, namely the phrase "[f]or the purpose of this section" which prohibited the court from applying the reckless driving definition to the vehicular homicide statute. See Dickert, 194 Wash. at 632, 79 P.2d 328. As a result there is no longer any statutory basis to distinguish the reckless driving definition from the operating a motor vehicle in a reckless manner prong of the vehicular homicide and assault statutes. The majority however avers Bowman's interpretation of the vehicular homicide and assault statutes operates as though the legislature had originally written it into the statute. Were we confronted with the same statute at issue in Bowman, I would be inclined to agree. But the legislative amendments subsequent to Bowman unequivocally demonstrate we face a different legislative scheme.[9]
Rather than follow a line of cases based on grounds that no longer exist, I instead abide by the legal maxim cessante ratione legis cessat et ipsa lex:"When the reason of the law ceases, the law itself also ceases." BLACK'S LAW DICTIONARY 1622 (7th ed.1999); see also State ex rel. King County v. Superior Court, 104 Wash. 268, 275, 176 P. 352 (1918) (following doctrine). "Reckless" as used in the vehicular homicide and vehicular assault statutes, RCW 46.61.520(1)(b), RCW 46.61.522(1)(a), has the same meaning as "reckless driving" as defined by RCW 46.61.500(1). Plain language requires as much. RCW 46.98.020.[10]

*210 III. Unconstitutional to Fail to Use or Instruct Jury on "Willful or Wanton" Standard
Axiomatic in constitutional jurisprudence is the requirement for the "State [to] prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld." State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). This court has held, in the context of examining the reckless driving statute as a lesser included offense of felony flight from a police officer, that "reckless driving requires either a willful or wanton disregard for the safety of others." State v. Parker, 102 Wash.2d 161, 164, 683 P.2d 189 (1984); see also id. at 168, 683 P.2d 189 (Utter, J., dissenting) ("The crime of reckless driving... requires the jury to find a defendant conscious and capable of forming a purposeful mental state; he, too, must be found capable of driving with a `wilful [sic] or wanton' disregard for the safety of others." (quoting RCW 46.61.500 and WPIC 95.10)).
It follows then that an element of reckless driving is acting with either willful or wanton disregard for the safety of persons or property. RCW 46.61.500(1). And since this definition of reckless driving applies to crimes of vehicular homicide and vehicular assault, the failure to instruct the jury on that element deprives the defendant of the constitutional right to a jury determination on all elements of the alleged crime. State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997) ("It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved.").

IV. Errors Not Harmless
Finally, I dispose of any contention these errors might be so harmless the convictions should nonetheless be upheld. Though an erroneous jury instruction and/or conclusion of law that misstates an element of a charged crime unconstitutionally violates the right to a jury, the conviction will still be upheld if the error was harmless beyond a reasonable doubt. State v. Brown, 147 Wash.2d 330, 344, 58 P.3d 889 (2002). The test for harmless error when the instructions misstate or omit an element is "whether it appears `beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)), quoted in Brown, 147 Wash.2d at 341, 58 P.3d 889. Such an inquiry requires the appellate court to "ask[ ] whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." Id. at 19, 87 S.Ct. 824. "When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence." Brown, 147 Wash.2d at 341, 58 P.3d 889 (citing Neder, 527 U.S. at 18, 119 S.Ct. 1827). These errors plainly cannot meet that standard.

State v. Roggenkamp
Recognizing Michael Roggenkamp's conviction or acquittal hinged on "the definition of reckless," V Roggenkamp Verbatim Report of Proceedings (May 25, 2001) at 108, the trial judge opined the "rash or heedless manner, indifferent to the consequences" standard precluded him from considering Roggenkamp's mental state, instead focusing his concentration on the act itself:
1. Recklessness, as defined in WPIC 90.05, focuses on the act itself rather than the mens rea. Reckless driving as defined in the relevant statute [RCW 46.61.520(1)(b) and RCW 46.61.522(1)(a)] is shaded towards the negligent driving standard as opposed to the non-negligent or non-vehicular homicide or vehicular assault definition of recklessness, which requires proof of willfulness or wanton conduct. However, ordinary negligence in operating a motor vehicle does not render a person guilty of vehicular homicide. *211 Recklessness under these standards is easier to prove than the willful or wanton standard, which incorporates a greater focus on the mental state of the person.

RCP at 126 (Conclusions of Law 1) (emphasis added). The trial judge correctly recognized the "willful or wanton" standard examines the defendant's mental state, considering the inherently subjective components of those terms. See Adkisson v. City of Seattle, 42 Wash.2d 676, 682-83, 258 P.2d 461 (1953).
That the trial judge specifically admitted the prosecution's burden was "easier to prove" because of the "rash or heedless manner, indifferent to the consequences" standard demonstrates the reasonable possibility a different result would have been reached had the trial judge followed the "willful or wanton" standard. Therefore reasonable doubt exists as to whether the legal error was harmless.

State v. Clark
The same is true for Jason Clark. As Clark drove down Northeast Minnehaha Street in Vancouver, he pulled alongside a vehicle driven by Thomas Severson. There was conflicting testimony as to whether Clark intended to race Severson and how fast Clark was driving throughout the entire incident. Clark testified that when he pulled up alongside Severson that passenger Monica Caywood made an obscene gesture to Severson (she "flipped him off"), and that he sped away from Severson "so he didn't try anything" as Clark "didn't know the guy." II Verbatim Report of Proceedings (State v. Clark) at 150. This evidence reasonably suggests Clark did not increase his speed "willful[ly] or wanton [ly]." RCW 46.61.500(1). Furthermore, there was controverted evidence over how fast Clark actually drove. More fundamentally though, the jury expressed confusion over the definitions of "rash," "indifferent," and "heedless," as evidenced by its request for definitions of each term, CCP at 21,[11] thus indicating a reasonable possibility the jury might have returned an acquittal had it been instructed differently on a more difficult standard for the State to meet.
As reasonable doubt exists in both State v. Roggenkamp and State v. Clark whether use of the erroneous "rash or heedless manner, indifferent to the consequences" standard was harmless, reversal is required in each case.

CONCLUSION
Read in its present state, "reckless" must have identical meaning throughout the Motor Vehicle Code. Necessarily then, a person is guilty of vehicular homicide or vehicular assault if charged due to death or injury resulting from "operating a motor vehicle ... [i]n a reckless manner," RCW 46.61.520(1)(a), only if that person was "reckless[ly] driving" as defined in RCW 46.61.500(1). There is no current ground to bifurcate these definitions, and the majority's adherence to antiquated precedent, the basis of which was repealed by the legislature almost 40 years ago, ignores the current plain language of Title 46 RCW. In so doing, the majority effectively nullifies RCW 46.98.020's command to construe all provisions of the Motor Vehicle Code in pari materia. Our role as interpreters of the law leaks into the legislative realm when we ignore unequivocal statutory commands.
For these reasons I dissent.
CHAMBERS, J. (concurring in dissent).
I concur with the dissent that the statutory underpinning of the jury instruction has been statutorily eroded. See dissent at 205; RCW 46.61.500(1) (modern definition of reckless driving). I also agree with the dissent that the error in the instruction was not harmless beyond a reasonable doubt, as required by State v. Brown, 147 Wash.2d 330, 344, 58 P.3d 889 (2002). The erroneous instruction substantially relieved the prosecution of its burden to prove willful and wanton behavior, and I cannot say with confidence  let alone beyond a reasonable doubt  that a properly instructed jury would have found the defendants *212 guilty. To that extent, I concur in the dissent.
NOTES
[1] RCW 46.61.522(1), the vehicular assault statute, reads:

"(1) A person is guilty of vehicular assault if he or she operates or drives any vehicle:
"(a) In a reckless manner and causes substantial bodily harm to another; or
"(b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and causes substantial bodily harm to another; or
"(c) With disregard for the safety of others and causes substantial bodily harm to another." (Emphasis added).
RCW 46.61.520(1), the vehicular homicide statute, reads:
"(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
"(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
"(b) In a reckless manner; or
"(c) With disregard for the safety of others." (Emphasis added.)
[2] RCW 46.61.500(1), the reckless driving statute, in pertinent part, reads: "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."
[3] The dissent suggests that a provision in Washington's criminal code, RCW 9A.08.010(1)(c), which provides a default definition of "recklessness," should apply here. Because we do not read the word "reckless" in isolation, RCW 9A.08.010(1)(c) is not applicable.
[4] The dissent points out that we also recognize the inverse rule. Dissent at 205. "When the same word or words are used in different parts of the same statute, it is presumed that the words of the enactment are intended to have the same meaning." Medcalf v. Dep't of Licensing, 133 Wash.2d 290, 300-01, 944 P.2d 1014 (1997) (emphasis added); see DeGrief v. City of Seattle, 50 Wash.2d 1, 11, 297 P.2d 940 (1956). However, here the legislature did not use "the same word or words" but, rather, used different terms, i.e., "in a reckless manner" and "reckless driving."
[5] The dissent claims that we make our distinction between the vehicular homicide and vehicular assault statutes and the reckless driving statute based on use of the terms "operates" or "operating" in the vehicular homicide and vehicular assault statutes and the term "drives" in the reckless driving statute. Dissent at 206-207 In fact the distinction we draw is based on use of the term "reckless manner" in the vehicular homicide and vehicular assault statutes and "reckless driving" in the reckless driving statute. That distinction is not, as the dissent suggests "mere semantics." Id. at 206 (emphasis added).
[6] As the dissent points out, RCW 46.98.020 states that provisions of Title 46 RCW "shall be construed in pari materia." Because we deal here with different terms, RCW 46.98.020 does not require us to give these terms the same definition.
[7] The 1965 revision of the Motor Vehicle Code was contained in House Bill 234. Contrary to the dissent's suggestion House Bill 234 was not enacted "to remove the phrase `[f]or the purpose of this section.'" Dissent at 208. House Bill 234 was a major revision of the State's motor vehicle laws and constituted over 90 sections.
[8] Consistent with the express language of the 1937 reckless driving statute, this court recognized the distinction between construction of the term "in a reckless manner" as used in the reckless driving statute and that term as used in the vehicular homicide statute. State v. Dickert, 194 Wash. 629, 632, 79 P.2d 328 (1938). This distinction was not, as the dissent claims, made between the terms "reckless driving" and "reckless manner." Dissent at 207. The distinction recognized in Dickert was between two different constructions of the same term:"reckless manner." See Dickert, 194 Wash. at 631-32, 79 P.2d 328. The exceptional construction dictated in the 1937 reckless driving statute applied to the term "in a reckless manner" not the term "reckless driving."
[9] Roggenkamp points to Carpenter's "absolute minimum" 1.3 blood alcohol concentration, her alleged running of a stop sign immediately prior to the collision, and the fact he locked his car's brakes immediately prior the wreck and went into an uncontrolled skid as support for his argument that the evidence was insufficient to establish that his actions were the proximate cause of JoAnn Carpenter's and Andrew Strand's injuries and Michael Carpenter's death. Clerk's Papers at 124.
[1] This is so despite the vehicular homicide statute's use of the past progressive tense "was operating" in contrast to the vehicular assault statute's use of the present simple tense "operates." Compare RCW 46.61.520(1) ("was operating") with RCW 46.61.522(1) ("operates"). In the interest of simplicity I cite only to the vehicular homicide statute, RCW 46.61.520(1)(b), unless the context requires otherwise.
[2] The Roggenkamp court used a conjunctive "rash and heedless" definition, RCP at 126-27 (Conclusion of Law 1) (emphasis added) whereas the Clark court instructed the jury with a disjunctive "rash or heedless" definition, CCP at 17 (Instruction 10) (emphasis added). Both standards are erroneous for the reasons which follow. However, because our pre-1965 cases recognized a disjunctive "rash or heedless" definition, see infra pp. 201-202, I cite that phrase throughout.
[3] Notably, Title 28A RCW's in pari materia construction section is identical in all relevant parts to Title 46 RCW's sister provision. Compare RCW 28A.900.040 ("The provisions of this title, Title 28A RCW, shall be construed in pari materia even though as a matter of prior legislative history they were not originally enacted in the same statute.") with RCW 46.98.020 ("The provisions of this title shall be construed in pari materia even though as a matter of prior legislative history they were not originally enacted in the same statute.").
[4] The majority at 201 nn. 4-5 emphasizes that the terms modified by "reckless" differ in the relevant statutes. However, it is the term "reckless" over which there is a definitional dispute. As I note below, there is no way to "operate" a vehicle other than to "drive" it, and thus the terms "operate ... in a reckless manner" (RCW 46.61.520(1)(b)) and "reckless driving" (RCW 46.61.500(1)) are synonymous if the term "reckless" is identically defined.
[5] Until 1983 the crime was called "negligent homicide by means of a motor vehicle." LAWS OF 1937, ch. 189, § 120. When the legislature criminalized vehicular assault in 1983, it reclassified "negligent" homicide as "vehicular" homicide. LAWS OF 1983, ch. 164, § 1. The final bill report indicates this was done because "the term `vehicular homicide' is more descriptive of the crime than `negligent homicide.'" S.B. REP. on S.B. 3106, at 1, 48th Leg., Reg. Sess. (Wash.1983).
[6] Stevick held that ordinary negligence was sufficient to support a conviction under the reckless manner prong of negligent homicide. Stevick, 23 Wash.2d at 427, 161 P.2d 181. Partridge overruled that holding, stating that "something more than" ordinary negligence is required to sustain a conviction. Partridge, 47 Wash.2d at 645, 289 P.2d 702.
[7] The majority at 203 n. 8 again misses the point. As noted above, repeatedly, if the "manner of operating" is the same as "driving" a vehicle, and the majority has not suggested the contrary, then the dispute here is over the definition of "reckless." The distinction in Dickert could as easily be summarized as the plain language distinction between the definition of "reckless" in the "reckless driving" statute and the definition of "reckless" in what was the "negligent homicide by means of a motor vehicle" statute. (Until 1983, vehicular homicide was termed "negligent homicide by means of a motor vehicle." Laws of 1937, ch. 189, § 120.)
[8] Though the statute has been subsequently amended to reflect its classification as a misdemeanor, LAWS OF 1979, 1st Ex.Sess., ch. 136, § 85, and then a gross misdemeanor, LAWS OF 1990, ch. 291, § 1, the "willful or wanton disregard for the safety of persons or property" has remained the same. Compare LAWS OF 1965, Ex.Sess., ch. 155, § 59 (employing quoted language) with RCW 46.61.500(1) (same).
[9] The post-Bowman cases referencing the "a rash or heedless manner, indifferent to the consequences" standard are inapposite to the issue at hand. See State v. Brooks, 73 Wash.2d 653, 440 P.2d 199 (1968); State v. Eike, 72 Wash.2d 760, 435 P.2d 680 (1967). Not only was the definition of "operating a motor vehicle ... [i]n a reckless manner" at issue in Brooks, but the court never even mentioned the "rash or heedless, indifferent to the consequences" definition the majority here follows. Eike is equally inapposite. There we recognized the vehicular homicide statute sets forth not two, but three methods of committing the crime: "(1) Driving while under the influence of or affected by intoxicating liquor or narcotic drugs; (2) driving in a reckless manner; and (3) driving with disregard for the safety of others." Eike, 72 Wash.2d at 764, 435 P.2d 680. We rejected the defendant's contention that "driving with disregard for the safety of others," id. at 766, 435 P.2d 680, was subsumed in the "driving in a reckless manner" alternative. The only mention of the "rash or heedless" standard followed by the majority appeared in the Eike dissent. See id. at 778 n. 5, 435 P.2d 680 (Donworth, J., dissenting). Thus, no decision from this court considered the propriety of the "rash or heedless, indifferent to the consequences" standard after the 1961 and 1965 legislative amendments.
[10] The majority at 203 also declares the "only construction of `in a reckless manner' that remained" after the 1965 reckless driving statute was the court's prior construction of the vehicular homicide statute. This ignores the fact that the Legislature passed the "in pari materia" statute in 1961. The enactment of the "in pari materia" was the legislature's directive that similar terms in the statute be construed the same, and by giving definitional content to "reckless" driving (i.e., operation of a motor vehicle) the legislature was clearly rejecting this court's prior construction of the term as used in other sections in the same title.

Further it is clear that while the majority is possibly correct that the legislature's purpose may have been to "eliminate confusion" over the meaning of "reckless manner" (although one would think that Dickert itself cleared up any such "confusion"), the resolution of that "confusion" was to define "reckless" driving (i.e., operation of a motor vehicle) in RCW 46.61.500(1) and to apply that definition through the "in pari materia" statute to RCW 46.61.520(1)(b).
[11] The trial court provided the jury with no additional guidance, instructing the jury it "should rely upon [its] common understanding of the ordinary meaning of these words." CCP at 21.