# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NARINDER DUGGAL, M.D., | No. 48258-4-II |
| Appellant, | |
| v. | |
| MEDICAL QUALITY ASSURANCE COMMISSION, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. —Dr. Narinder Duggal appeals a decision entered by an administrative law judge (ALJ) prior to Dr. Duggal's scheduled adjudicative hearing in front of the Medical Quality Assurance Commission of the State of Washington (Commission) on charges of unprofessional conduct and sexual misconduct. Dr. Duggal appeals the ALJ's finding that he was bound by a proposed agreed order that he and his attorney signed, even though he had withdrawn his approval before the Commission accepted and signed the agreement. Dr. Duggal argues on appeal that the ALJ's decision was based on a misinterpretation of the law, violated his due process rights, and lacked substantial evidence.[1]

---

[1] Dr. Duggal also appeals the ALJ's denial of his oral motion for a continuance made after he had substituted counsel the day before. Because we reverse on other grounds, we do not address this argument.

We hold that (1) the ALJ's decision to bind Dr. Duggal to the proposed agreed order was based on a misinterpretation of the law because the ALJ relied on WAC 246-11-270, a regulation that only applies to a defendant's responses to initiating documents, not agreed orders; (2) language of the proposed agreed order, statements of the Department of Health's staff attorney, and basic contract law establish that the proposed agreed order was tentative and could be withdrawn before the Commission accepted and signed it; and (3) the ALJ's ruling caused Dr. Duggal substantial prejudice. Accordingly, we reverse the ALJ's decision and remand for further proceedings.

FACTS

On November 28, 2012, based on the complaints of six patients, the Commission issued a statement of charges against Dr. Duggal for unprofessional conduct under RCW 18.130.180(1), (4), (7), and (24), sexual misconduct under WAC 246-919-630(2), and abuse under WAC 246-919-640. Dr. Duggal filed an answer to the charges denying any wrongdoing and requesting an adjudicative proceeding and opportunity for settlement. A status conference was held in front of ALJ Frank Lockhart, and Dr. Duggal's adjudicative hearing was set for August 19-23, 2013.

On April 30, 2013, the Commission took summary action and suspended Dr. Duggal's medical license pending further disciplinary proceedings before the Commission. The Commission served an amended statement of charges against Dr. Duggal the next day. The amended statement of charges added two more patients alleging violations of RCW 18.130.180(1), (4), (7), and (24), WAC 246-919-630(2), and WAC 246-919-640. Again, Dr. Duggal denied any wrongdoing, and requested an adjudicative proceeding and opportunity for settlement. In light of

the amended statement of charges, an amended scheduling order set the adjudicative hearing for January 27-February 3, 2014, with a prehearing conference on January 7, 2014.

On January 6, 2014, the day before the scheduled prehearing conference, and three weeks before the scheduled adjudicative hearing, Dr. Duggal's counsel filed a notice of withdrawal and substitution of counsel. At the scheduled prehearing conference the next day, Dr. Duggal's substitute counsel orally moved for a 120-day continuance, stating that he had not yet been able to familiarize himself with the case and had not seen any discovery. Substitute counsel noted in his motion that he only accepted the substitution of counsel on the condition that he be granted the continuance. The Commission objected to the continuance and substitution of counsel. ALJ Lockhart entered Prehearing Order No. 3, denying the continuance.

Because it was not clear whether there would be a substitution of counsel when the motion for continuance was denied, ALJ Lockhart continued the scheduled prehearing conference until the next day, January 8. Substitute counsel represented Dr. Duggal at the prehearing conference on January 8.

On January 15, Dr. Duggal and substitute counsel signed a Stipulated Findings of Fact, Conclusions of Law and Agreed Order (Agreed Order) that acknowledged there was evidence sufficient to justify the Commission concluding that Dr. Duggal had committed unprofessional conduct in violation of RCW 18.130.180(1), (4), (7), and (24), WAC 246-919-630, and WAC 246-919-640. The Agreed Order stated in pertinent part:

> The [Commission], through Lawrence J. Berg, Department of Health Staff Attorney, and Respondent, represented by counsel, Carol Sue Janes [original counsel], stipulate and agree to the following:
>
> . . . .

3

No. 48258-4-II

1.6     The parties agree to resolve this matter by means of this [Agreed Order].  Patients referred to in this Agreed Order are identified in the Confidential Schedule attached to the Amended Statement of Charges.

1.7     Respondent waives the opportunity for a hearing on the Amended Statement of Charges if the Commission accepts this Agreed Order.

1.8     This Agreed Order is not binding unless it is accepted and signed by the Commission . . . .

1.9     If the Commission accepts this Agreed Order, it will be reported to the Health Integrity and Protection Databank . . . .

. . . .

3.2     Respondent has committed unprofessional conduct in violation of RCW 18.130.180(1)(, (4), (7), and (24), WAC 246-919-630, and WAC 246-919-640.

. . . .

4.1     **Surrender.** Respondent agrees to SURRENDER his physician license, and agrees not to resume the practice of medicine in the state of Washington, including any temporary, emergency or volunteer practice. Respondent acknowledges that he is ineligible to renew, reactivate, or to practice subject to a retired active license as physician in the state of Washington.

. . . .

4.3     **Effective Date.** The effective date of this Agreed Order is the date the Adjudicative Clerk Office places the signed Agreed Order in the U.S. Mail.

. . . .

I, NARINDER M. DUGGAL, MD, Respondent, have read and understand this Agreed Order.  I agree to this Agreed Order solely for the purpose of resolving this proceeding.  This Agreed Order may be presented to the Commission without my appearance.  I understand that I will receive a signed copy if the Commission accepts this Agreed Order.

4

Clerk's Papers (CP) at 16, 17, 34, 35, 36. The Agreed Order was not signed by a representative of the Commission nor by Lawrence Berg, the Department of Health's staff attorney who presented the Agreed Order to Dr. Duggal, despite there being signature lines for those people on the Agreed Order.

On January 16, staff attorney Berg filed a memorandum with the Adjudicative Services Unit. The memorandum stated, "This case has been tentatively settled according to the terms set forth in the attached [Agreed Order]," and that the Agreed Order would be "presented for approval to the [Commission] on January 23, 2014." Administrative Record (AR) at 3688. A copy of the Agreed Order was attached, with minor revisions written on the signature page of the copy submitted. A second memorandum was filed with the Adjudicative Services Unit by staff attorney Berg the same day, again noting the case had been "tentatively settled," but that a scheduling conflict had arisen with the Commission, so the Agreed Order would be "presented for approval" to the Commission on February 13. AR at 3711.

On January 17, Presiding Officer and Senior Health Law Judge (Senior ALJ) Laura Farris, granted the State's request for a continuance. Senior ALJ Farris noted that a "proposed Agreed Order" would be presented to the Commission on February 13, and that "[i]f the Commission approve[d] the Agreed Order, the status conference w[ould] be stricken." AR at 3712.

On February 4, Dr. Duggal filed a letter with the Adjudicative Clerk Office. The letter was received by the Commission and the Health Systems Quality Assurance the same day. The letter stated that Dr. Duggal was "requesting a review of [his] case and a reopening of [his] case for a review." AR at 3714. In the letter, Dr. Duggal stated that he did not have his entire file from his former attorneys until shortly before he signed the Agreed Order. Dr. Duggal further noted that

5

his request for a continuance when he obtained new counsel was denied, despite the voluminous record, and his new counsel had subsequently discovered that the former attorneys had not deposed any of the eight individuals who had filed complaints against Dr. Duggal.

ALJ Lockhart treated the letter as a "Motion to Withdraw Stipulation," where Dr. Duggal was "requesting a full hearing on the matter, which could only happen if his stipulation was withdrawn." CP at 12; AR at 3718 (Prehearing Order No. 5).[2] ALJ Lockhart denied the "Motion to Withdraw Stipulation" on February 5, in Prehearing Order No. 5, without further briefing or argument from the parties. CP at 14.

Prehearing Order No. 5 states that "much of that discovery [that Dr. Duggal claimed he never reviewed] was the Respondent's own medical records" and that "Respondent's lack of involvement in his own case, in failing to review his own records, cannot be cited as good cause to withdraw his stipulation." CP at 13. As to Dr. Duggal's complaint about his attorney's failure to depose the patients lodging complaints against him, Prehearing Order No. 5 states that "a difference in defense strategy is not grounds for a new trial." CP at 13. Prehearing Order No. 5 concludes:

> In his stipulation, the Respondent admitted to unprofessional conduct. The administrative code governing these proceedings is clear. "Once admitted or not contested, an allegation may not be denied." WAC 246-11-270(d)(i). "When an allegation is admitted, it shall be conclusively deemed to be true for all further proceedings. No proof of the allegation need be submitted." WAC 246-11-270(e). His stipulation was negotiated and signed by, his current counsel. There are simply no grounds for allowing the Respondent to undo the stipulation he signed. Even if the stipulation were not presented to the Commission at the February 13, 2014

---

[2] There are actually two orders titled "Prehearing Order No. 5." AR at 3712, AR at 3716. For the purposes of this appeal, Prehearing Order No. 5 is the order entered on February 5 titled "Prehearing Order No. 5: Order Denying Respondent's Motion to Withdraw Stipulation." CP at 10; AR at 3716.

meeting, it could still be used at [the] hearing as an admission by the Respondent of unprofessional conduct under WAC 246-11-270(e).

CP at 14.  A copy of Prehearing Order No. 5 was directed to be sent to the Commission.

On February 13, the Adjudicative Clerk's Office mailed the February 13, 2014 Agreed Order to the Commission.  This Agreed Order was signed and dated by the panel chair of the Commission, and signed by staff attorney Berg.  The version signed was the one with the minor revisions that had been written in on the signature page after Dr. Duggal and substitute counsel had signed.  Dr. Duggal filed a petition for judicial review of Prehearing Orders Nos. 3 and 5.

On October 9, 2015, the superior court heard argument on Dr. Duggal's petition for review. Dr. Duggal argued that Prehearing Order No. 5 violated his due process rights because it held that the Agreed Order was binding upon him but not upon the State and that the plain language of the Agreed Order stated that it was not binding until approved by the Commission.  Dr. Duggal further argued that the decision in Prehearing Order No. 3, that "good cause" was not shown when counsel was substituted three weeks before the hearing, was arbitrary and capricious.  CP at 54.  The State argued that the Agreed Order was a binding contract when Dr. Duggal and substitute counsel signed it, and that the consideration Dr. Duggal received was "not having to appear in a hearing before his peers" in exchange for "surrendering his license and four of the patients[' complaints] were dropped."  Verbatim Report of Proceedings (VRP) (Oct. 9, 2015) at 20.  The State analogized the proceeding to divorce proceedings where the parties enter into an agreement, but the agreement must still be approved by a judge.

The superior court denied Dr. Duggal's petition for review.  The written order denying review did not contain a discussion or reasoning for the denial, but in its oral ruling, the superior

court stated that a constitutional due process violation would be arbitrary and capricious, and so the superior court reviewed whether the decision in Prehearing Order No. 5 was arbitrary and capricious, as stated in RCW 34.05.570(3)(i). As to Prehearing Order No. 5, the superior court held that the decision was not arbitrary and capricious because there was a basis for the ALJ's decision—"Dr. Duggal was represented by counsel" when the Agreed Order was signed, and "there is a presumption that people are held to what they sign." VRP (Oct. 9, 2015) at 38.

Dr. Duggal moved the superior court to reconsider. The superior court denied the motion. Dr. Duggal appeals.

ANALYSIS

On appeal, Dr. Duggal challenges Prehearing Order No. 5. The disagreement between the parties is whether Dr. Duggal was bound by the Agreed Order when he signed the document, even though the Commission received his letter seeking to reopen his case for review before the Commission accepted or signed the Agreed Order. We hold that under the facts of this case, Dr. Duggal was not bound by an Agreed Order that the Commission had not accepted or signed.

A. STANDARD OF REVIEW

Judicial review of disciplinary proceedings under the Uniform Disciplinary Act (UDA), chapter 18.130 RCW, is governed by the Washington Administrative Procedure Act (APA), chapter 34.05 RCW. RCW 18.130.100. On appeal, we review the administrative decision. *Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 520-21, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002).

Under the APA, a reviewing court may reverse an administrative order if the order violates the constitution, exceeds statutory authority, is the result of faulty procedure, involves an error in

interpreting or applying the law, is not supported by substantial evidence, omits issues requiring resolution, involves improper rulings on disqualification issues, is inconsistent with an agency rule, or is arbitrary or capricious. RCW 34.05.570(3)(a)-(i). The party challenging agency action has the burden of demonstrating the action is invalid and must show substantial prejudice. RCW 34.05.570(1)(a), (d).

We review decisions based on interpretation of the law de novo, but accord substantial weight to the agency's interpretation of a law it administers. *Ames v. Dep't of Health, Med. Quality Assurance Comm'n*, 166 Wn.2d 255, 260–61, 208 P.3d 549 (2009), *cert. denied*, 559 U.S. 939 (2010). Findings of fact are reviewed for substantial evidence, which is evidence "of sufficient quantity to persuade a fair-minded person of the truth or correctness of the agency order." *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 939, 155 P.3d 177 (2007), *review denied*, 162 Wn.2d 1017 (2008). An action is arbitrary and capricious if it is made without consideration for and in disregard of the facts and circumstances. *Johnson v. Dep't of Health*, 133 Wn. App. 403, 414, 136 P.3d 760 (2006).

We apply the rules of statutory construction in interpreting regulatory language. *Overlake Hosp.v. Dep't of Health*, 170 Wn.2d 43, 51, 239 P.3d 1095 (2010). When construing the meaning of the law, the plain language of the law controls. *Koenig v. City of Des Moines*, 158 Wn.2d 173, 181, 142 P.3d 162 (2006).

B.     PREHEARING ORDER NO. 5

Dr. Duggal argues that the ALJ erred in entering Prehearing Order No. 5 for several reasons. He contends that Prehearing Order No. 5 was based on a misinterpretation of the law,

violated his due process rights, was arbitrary and capricious, and was not supported by substantial evidence. We hold that Prehearing Order No. 5 was based on a misinterpretation of the law.[3]

1.      Inapplicability of WAC 246-11-270

Dr. Duggal argues that the ALJ erroneously interpreted the law in relying on WAC 246-11-270 to conclude that Dr. Duggal could not withdraw the stipulation because he had already admitted to its contents when he signed the Agreed Order. We agree.

WAC 246-11-270 is titled "Request for adjudicative proceeding" and provides:

A respondent may respond to an initiating document by filing an application for an adjudicative proceeding or by waiving the opportunity for [an] adjudicative proceeding.

(1) If the respondent wishes to file an application for an adjudicative proceeding:

(a) An application for [an] adjudicative proceeding must be filed . . .

. . . .

(d) The application for [an] adjudicative proceeding shall contain a response to the initiating documents, indicating whether each charge is admitted, denied or not contested, and responses shall be subject to the following conditions:

(i) Once admitted or not contested, an allegation may not be denied; and

(ii) An allegation denied or not contested may later be admitted.

(e) When an allegation is admitted or not contested, it shall be conclusively deemed to be true for all further proceedings. No proof of the allegation need be submitted.

Under its plain language, WAC 246-11-270(1) only acts to bind respondents to their admission or no-contest responses in the initiating documents.

---

[3] Because we hold that Prehearing Order No. 5 was based on a misrepresentation of the law, we do not reach Dr. Duggal's other arguments challenging this ruling.

In this case, the Commission initiated charges against Dr. Duggal on November 28, 2012. In his response, Dr. Duggal admitted that the State of Washington had granted him a medical license, but he denied every other charge. Also in his response to the initial charging document, Dr. Duggal checked the box that said, "I request an adjudicative proceeding and opportunity for settlement. If settlement is not reached, I am entitled to a hearing." AR at 68. The Commission then initiated amended charges against Dr. Duggal. Dr. Duggal again responded by denying every charge except that the State of Washington had granted him a medical license, and he again checked the box requesting an adjudicative hearing and an opportunity for settlement.

Applying these facts to WAC 246-11-270(1), the only allegation Dr. Duggal admitted, and therefore "may not be denied" and "shall be conclusively deemed to be true for all further proceedings," is his admission to being licensed to practice medicine by the State of Washington. The Agreed Order that Dr. Duggal signed not contesting the charges was not a response to initiating documents, it was part of the settlement negotiations that Dr. Duggal had requested in his responses to the initiating documents. WAC 246-11-270 simply does not contemplate actions occurring in the settlement negotiations. Therefore, the ALJ's reliance on WAC 246-11-270 in concluding that Dr. Duggal could not withdraw his stipulation in the Agreed Order was based on an erroneous interpretation or application of the law, and Dr. Duggal is entitled to relief from Prehearing Order No. 5.

2.     Ability to Withdraw Agreed Order

Even though WAC 246-11-270 is inapplicable, the question remains whether Dr. Duggal could withdraw his approval of the Agreed Order before the Commission accepted it. We conclude

11

for several reasons that the Agreed Order was not binding until the Commission accepted and signed it, and therefore, Dr. Duggal could withdraw his approval of the Agreed Order.

First, WAC 246-11-360(1) allows for settlement conferences, or other settlement processes, to be employed after a request for an adjudicative proceeding has been made. WAC 246-11-360(2) states, "The purpose of the settlement conference or other settlement process shall be to attempt to reach agreement on the issues and on a proposed order to be entered. Any agreement of the parties is subject to final approval by the board."

Second, the language of Agreed Order that Dr. Duggal signed reflected the "proposed" nature that WAC 246-11-360(2) requires. For example, paragraph 1.7 of the Agreed Order waived a hearing "if the Commission accepts th[e] Agreed Order"; paragraph 1.8 stated that "[t]his Agreed Order is not binding unless it is accepted and signed by the Commission"; the provision in paragraph 1.9 was qualified with "[i]f the Commission accepts this Agreed Order"; and the declaration above Dr. Duggal's signature noted Dr. Duggal would receive a copy "[i]f the Commission accepts this Agreed Order." CP at 17, 36.

Third, the language in the two memos sent by staff attorney Berg referencing the Agreed Order recognized the nonbinding nature of the Agreed Order. Both memos noted that the Agreed Order "tentatively settled" the case, subject to its presentment to the Commission. AR at 3688, 3711. The memos were sent to the ALJ requesting a continuance of the scheduled adjudicative hearing in light of the Agreed Order. In granting the continuance, the ALJ called the Agreed Order the "proposed Agreed Order" multiple times and noted that further proceedings would be stricken "[i]f the Commission approve[d] the Agreed Order." AR at 3712.

Finally, principles of contract law support Dr. Duggal's ability to withdraw his approval of the Agreed Order before the Commission accepted it. When interpreting contracts, we try to give effect to the intent of the parties at the time of contract. *RSD AAP, LLC v. Alyeska Ocean, Inc.,* 190 Wn. App. 305, 315, 358 P.3d 483 (2015), *review denied*, 185 Wn.2d 1023 (2016). Contract interpretation is a question of law where no ambiguity exists in the language of, or extrinsic evidence surrounding, the contract. *Id.* at 316. "If contractual language is 'clear and unambiguous,' we must enforce the written contract." *Id.* (quoting *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722, *review denied*, 142 Wn.2d 1014 (2000)).

Here, the language of the Agreed Order states that the "Agreed Order is not binding unless it is accepted and signed by the Commission." CP at 17. Several other provisions within the Agreed Order state that it is conditioned upon the Commission's acceptance. This language is clear and unambiguous. The memos sent by staff attorney Berg further support the interpretation that the Agreed Order was conditioned upon the Commission's acceptance. Thus, applying the principles of contract law, the ALJ's entry of Prehearing Order No. 5 was in error.

3.    Substantial Prejudice

Having established that the ALJ's decision was invalid, Dr. Duggal must also establish substantial prejudice. RCW 34.05.570(1)(a), (d). Here, the substantial prejudice is the loss of his medical license without a hearing. *See Nguyen*, 144 Wn.2d at 522-23 (holding that a medical license is a protected property interest entitled to the protections of due process).

CONCLUSION

We hold that the ALJ erred in refusing to allow Dr. Duggal to withdraw his approval of the Agreed Order before the Commission accepted and signed the Agreed Order. Accordingly, Dr.

No. 48258-4-II

Duggal is entitled to relief from Prehearing Order No. 5. We reverse and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, J.

Maxa, A.C.J.